*825 Order, Supreme Court, New York County (Douglas E. Mc-Keon, J.), entered May 6, 2009, which granted a petition for leave to serve a late notice of claim, unanimously reversed, on the law and the facts, without costs, the petition denied, and the proceeding dismissed.
The issue on this appeal is whether Supreme Court properly granted petitioner’s application for leave to serve on respondent New York City Health and Hospitals Corporation a notice of claim after the statutory 90 days had expired. In determining an application for leave to serve a late notice of claim (General Municipal Law § 50-e [5]), “the court must consider relevant factors and circumstances, including whether an infant is involved, whether there is a reasonable excuse for the delay, whether the public corporation acquired actual knowledge of the facts constituting the claim within 90 days or a reasonable time thereafter, and whether the public corporation’s defense on the merits would be substantially prejudiced by the delay” (Seymour v New York City Health & Hosps. Corp. [Kings County Hosp. Ctn], 21 AD3d 1025, 1026 [2005]). Not a single one of the relevant factors weighs in petitioner’s favor.
Petitioner, who was then 29 years old, was seen at Harlem Hospital in the early morning hours of December 1, 2007, after being punched in the left eye. The hospital record indicates that he had swelling and bruising from above his left eye extending down to his cheek. CAT scans were taken of petitioner’s head and maxillofacial bones. The hospital records indicate that there were “soft tissue swelling/hematoma” and no fractures and that “[t]he extraocular muscles, the optic nerve/sheath complexes and remaining intraconal and extraconal fat and soft tissue structures appear unremarkable.” Petitioner was released later that day after being directed to return if he experienced headaches, vomiting, trouble seeing or fever. The records further indicate that petitioner was directed to see his primary care physician within five days.
Petitioner did not return to the hospital and did not comply with this instruction to see his primary care physician within five days. Rather, even though he alleges that “[d]uring the ensuing months [his] vision continued to deteriorate,” he did not seek any further medical treatment for more than one year. On December 24, 2008, while visiting his mother in California, petitioner consulted with a doctor who petitioner asserts, advised him that he had “a severe retinal detachment in [his] left eye.” Thereafter, upon returning to New York, petitioner asserts that he consulted with a retinal specialist on January 7, *826 2009 and was advised “that as a result of the failure to promptly treat the injury . . . following the . . . assault, [he] developed a severe retinal detachment that has caused permanent diminution of vision in [his] left eye and may result in total blindness in the eye.”
On or about February 12, 2009, more than 14 months after petitioner was seen at Harlem Hospital, petitioner sought leave to serve a late notice of claim. In the petition, he asserts that although there was swelling and tenderness in the area in and around his left eye, “there was no examination or evaluation by an ophthalmologist,” an ophthalmology consult was not requested, and he was not given a referral to an ophthalmologist. Petitioner then asserts that “an evaluation by an ophthalmologist should have been performed,” and “that as a result of the failure to promptly treat the injury . . . [he] developed a severe retinal detachment that has caused permanent diminution of vision . . . [which] may result in total blindness in the eye.” Petitioner makes no effort to support these assertions with an affidavit from a physician. Nonetheless, he contends that he should be permitted to serve a late notice of claim because respondent “is in possession of the relevant medical records” and he “had no knowledge until recently that his retina had been injured.”
In the first place, petitioner is an adult and was an adult at the time of the incident. Second, he clearly failed to provide a reasonable excuse for the delay of approximately 11 months in seeking to serve a notice of claim. While he alleges that his failure to see a specialist was due to respondent’s failure to provide a proper diagnosis or referral, he does not deny that he was advised to return to the hospital if he suffered any difficulty with his vision and to see his primary care physician in five days. Additionally, he admits that his vision began to deteriorate in the “ensuing months” but fails to provide any details regarding when he first experienced difficulty with his vision. If all the deterioration occurred in February or March of 2008, petitioner’s delay would be manifestly inexcusable. But for all that can be gleaned from petitioner’s motion, that well may be the case. Of course, moreover, the burden is on petitioner (Matter of Lauray v City of New York, 62 AD 3d 467 [2009]). Furthermore, petitioner also failed to provide any details regarding why he neglected to follow the advice given to him by the hospital staff.
Petitioner maintains that the fact that he waited more than a year to seek treatment is only relevant to the issue of comparative fault. To the contrary, it is clearly relevant to the issue of whether he provided a reasonable excuse. In the absence of any *827 information regarding when the deterioration began and why he did not seek treatment despite the deterioration, petitioner has offered no excuse, let alone a reasonable one, for his delay in seeking leave to serve a notice of claim.
Petitioner relies on respondent’s possession of the medical records in asserting that it had actual knowledge of the facts constituting the claim. As the Court of Appeals has stressed, however, “[m]erely having or creating hospital records, without more, does not establish actual knowledge of a potential injury where the records do not evince that the medical staff, by its acts or omissions, inflicted any injury on plaintiff ’ (Williams v Nassau County Med. Ctr., 6 NY3d 531, 537 [2006] [emphasis added]; see also Delgado v City of New York, 39 AD3d 387 [2007]; Matter of Nieves v New York Health & Hosps. Corp., 34 AD3d 336, 338 [2006]).
In Delgado, this Court stressed that the “Fire Department’s ambulance report contained no information from which notice of a claim of negligence on respondent’s part could have been readily gleaned” (39 AD3d at 388). What was true in Delgado is true here, too. And here, as in Nieves, “petitioner[ ] fail[s] to identify anything in the records which would have afforded respondent notice of the facts constituting [his] claim, or to alert it as to any potential negligence on its part” (34 AD3d at 338). This Court has repeatedly held that a motion to serve a late notice of claim should not be granted where, as here, there is no reasonable excuse and the possession of the medical records fails to establish that the respondent had actual knowledge (see e.g. id.; Velazquez v City of N.Y. Health & Hosps. Corp. [Jacobi Med. Ctr.], 69 AD3d 441 [2010]; Webb v New York City Health & Hosps. Corp., 50 AD3d 265 [2008]).
To be sure, a claim of malpractice can be evidenced from the face of medical records (see e.g. Bayo v Burnside Mews Assoc., 45 AD3d 495 [2007] [plaintiffs submitted affirmations from physician establishing that medical records, on their face, evidence failure to provide infant plaintiff with preventive care against lead poisoning]; Greene v New York City Health & Hosps. Corp., 35 AD3d 206, 207 [2006] [plaintiffs experts based opinion on records that included incomplete sonogram showing that infant plaintiff’s left kidney was dilated and no follow-up sonogram]). However, even petitioner does not argue that this is such a case. Rather, he maintains that because the petition states that his claim relates specifically to the failure to have an ophthalmologist examine his left eye or render prompt and appropriate treatment to prevent the severe retinal detachment that caused permanent diminution of vision, respondent was apprised of the acts or omissions that are the basis of his claim.
*828 This argument is devoid of merit. Its obvious flaw is that it conveniently assumes that a review of the medical record would reveal that his retina had become detached or that an ophthalmologist should have examined petitioner. Nothing in the hospital records provides support for this assumption and petitioner did not submit an affidavit from an expert that would support it. This Court has repeatedly stressed the presence of such an affidavit in upholding grants of motions for leave to serve a late notice of claim (see e.g. Lisandro v New York City Health & Hosps. Corp. [Metropolitan Hosp. Ctr.], 50 AD3d 304, 304 [2008], lu denied 10 NY3d 715 [2008] [“plaintiff submitted affirmations from physicians establishing that the available medical records, on their face, evinced that defendants failed to provide the infant plaintiff with proper care”]; Talavera v New York City Health & Hosps. Corp., 48 AD3d 276, 277 [2008] [“Plaintiffs submitted affirmations from a physician establishing that the medical records, on their face, evince that defendant failed to provide proper care to plaintiffs”]; Bayo v Burnside Mews Assoc., 45 AD3d 495 [2007], supra).
Notably absent from the hospital records is any complaint by petitioner that he was experiencing difficulty with his vision. In fact, the hospital records establish that petitioner had no complaints other than being punched in the eye. Further, the hospital records expressly state that “[t]he extraocular muscles, the optic nerve/sheath complexes and remaining intraconal and extraconal fat and soft tissue structures appear unremarkable.” One needs no medical expertise to know that this statement cannot possibly support the conclusion that it would be apparent from the face of the records that a detached retina should have been diagnosed or that petitioner should have been referred to an ophthalmologist. It may be that a medical expert nonetheless might opine that it is apparent from the records that petitioner should have been referred to an ophthalmologist. Of course, however, since no expert affidavit was submitted and we cannot glean from the medical records what an expert may have been able to provide, we cannot say that respondent had actual knowledge of the facts constituting his claim of malpractice.
Petitioner also fails to demonstrate the lack of any prejudice to respondent from his unexplained delay. Respondent’s possession of medical records that could not alert it to a claim of malpractice obviously cannot, ipso facto, establish a lack of prejudice. Moreover, petitioner was seen once in the emergency room with some swelling and bruising on his face, hardly an incident likely to have been burned into the memories of the hospital *829 staff who treated him. More importantly, petitioner bears the burden of showing a lack of prejudice (Matter of Lauray v City of New York, 62 AD3d 467 [2009], supra), but asserts nothing to demonstrate that the passage of time has not caused prejudice. Of course, the likelihood of the staff having any recollection of petitioner is diminished by the passage of time. Here, as in Nieves, where there was a one-year period of delay, “other than conclusory assertions to the contrary, petitioner[ ] ha[s] failed to rebut respondent’s claim that [the] delay in filing the notice of claim prejudiced its ability to investigate and defend the claim” (34 AD3d at 338). Concur—Friedman, J.P., Catterson, McGuire, Acosta and Renwick, JJ.